IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DISH NETWORK CORPORATION and  **:**
DISH NETWORK L.L.C.  **:**
         Plaintiffs **:**  Case No.  1:16-cv-04011-ALC
     v.        **:**
              **:**
ACE AMERICAN INSURANCE COMPANY **:**
              **:**
         Defendant **:**
              **:**
              **:**

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs DISH Network Corporation and DISH Network L.L.C., by and through their undersigned counsel, hereby file this Amended Complaint against defendant ACE American Insurance Company ("ACE").  Plaintiffs are referred to herein collectively as "DISH."

## I.  NATURE OF ACTION

1. This is an insurance coverage action for declaratory judgment and breach of contract arising out of ACE's failure to defend (or pay the costs of defending) and indemnify DISH in four underlying lawsuits ("Underlying Lawsuits" or "Underlying Litigation") captioned as:

  a. *DISH Network L.L.C. v. American Broadcasting Companies, Inc., et al.*, Case No. 1:12-cv-04155 (S.D.N.Y.) (the "ABC Suit").[1]

  b. *CBS Broadcasting Inc., et al. v. DISH Network Corp., et al.*, Case No. 1:12-cv-06812 (S.D.N.Y.) (the "CBS Suit") (which was transferred from the Central District of California and consolidated with the ABC Suit);

---

[1] CBS Corporation, Fox Entertainment Group, Inc., Fox Television Holdings, Inc., Fox Cable Network Services, L.L.C., and NBC Universal Media, L.L.C. are also parties to the ABC Suit.

- 2 -

     c.     *Fox Broadcasting Company, et al. v. DISH Network Corp., et al.*, Case No. 2:12-cv-04529 (C.D. Cal.) (the "Fox Suit"); and

     d.     *NBC Studios, LLC, et al., v. DISH Network Corp. et al.*, Case No. 2:12-cv-04536 (C.D. Cal.) (the "NBC Suit").

2.     By this action, DISH seeks declarations regarding the rights and obligations of the parties under insurance policies that DISH purchased from ACE, and the contractual remedy of specific performance, injunctive relief or, in the alternative, damages, to remedy ACE's breaches of contract.

## II. THE PARTIES

3.     Plaintiff DISH Network Corporation is incorporated in the state of Nevada, with its principal place of business in Englewood, Colorado.

4.     Plaintiff DISH Network L.L.C. is incorporated in Colorado, with its principal place of business in Englewood, Colorado.

5.     DISH Network Corporation holds, through a series of wholly-owned entities, 100% of DISH Network L.L.C.

6.     DISH provides, among other things, direct-to-the-home satellite television products and services to paying subscribers.

7.     ACE is an insurance company that sold liability insurance to DISH.  Upon information and belief, ACE is organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

## III. JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because:

     a.     diversity of citizenship exists between DISH and ACE; and

b.      the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000).

9.      Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue herein occurred in this judicial district.  In that regard, the ACE Policies were issued from New York and a substantial part of the Underlying Litigation for which DISH seeks a defense and indemnity was adjudicated in this judicial district.

## IV. THE UNDERLYING LAWSUITS

10.      The Underlying Lawsuits were all filed in May 2012 and have been identified as related lawsuits.   DISH is a defendant in the CBS Suit, Fox Suit, and NBC Suit and a counterclaim-defendant in the ABC Suit.

11.      In the Underlying Lawsuits, entities comprising the four major television networks in the United States - ABC, NBC, CBS and Fox (collectively referred to as the "Broadcasters"), assert claims against DISH.

12.      The Broadcasters allege that DISH, through its digital video recorder, the Hopper, is infringing on the Broadcasters' exclusive reproduction rights in violation of The Copyright Act, 17 U.S.C. § 101 *et seq.*, by making the Broadcasters' copyrighted programming available to DISH's customers without commercials. The Broadcasters allege further that DISH is secondarily liable for copyright infringement (including claims of inducement, vicarious liability and contributory liability) for encouraging customers to use the Hopper and related services to store and view primetime television without commercials.

13.      The Broadcasters allege that DISH, through its marketing and advertising, has induced customers to infringe in violation of The Copyright Act.

14.     DISH retained the services of the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick), 51 West 52nd Street, New York, New York, 10019, to defend the interests of DISH in the Underlying Lawsuits.

15.     Lead trial counsel at Orrick, Peter Bicks, and his team are based in New York, New York.   Mr. Bicks was assisted by numerous Orrick partners, associates and paralegals in defending DISH's interests in the Underlying Litigation.   While some of the team was located in California offices, the nerve center of DISH's defense was located in New York, and the day-to-day management and coordination of DISH's defense across the various actions was handled in New York.

16.     At the height of the Underlying Litigation, DISH's defense team was comprised of the following members from Orrick's New York office:

- Peter Bicks, partner
- Elyse Echtman, partner
- Lisa Simpson, counsel
- Joshua Rosenkranz, counsel
- Ayanna Lewis-Gruss, counsel
- Cyrus Rieck, associate
- Brian Ginsburg, associate
- Jacob Albertson, associate
- Shasha Zou, associate
- Oward Anson, paralegal
- Elizabeth Walker, paralegal

17.     DISH produced hundreds of thousands of pages of documents in discovery during the pendency of the Underlying Lawsuits.

18.     The personnel responsible for coordinating any production of the documents produced in the Underlying Lawsuits are located primarily in New York.   Accordingly, Orrick's New York personnel will be necessary for determining the location of responsive documents, addressing privilege and/or confidentiality concerns, and managing the logistics of a production.

19.     DISH incurred, and continues to incur, substantial amounts far exceeding the

jurisdictional amount in defending and resolving the claims asserted in the Underlying Lawsuits.

### V.  THE ACE LIABILITY INSURANCE POLICIES

20.     ACE issued the following commercial general liability ("CGL") policies to DISH:

    a.  Policy number G25531309, effective August 1, 2011 to August 1, 2012 (the "2011 ACE Policy").  The full terms and conditions of the 2011 ACE Policy are incorporated herein by reference.

    b.  Policy number G27011007 effective August 1, 2012 to August 1, 2013 (the "2012 ACE Policy").  The full terms and conditions of the 2012 ACE Policy are incorporated herein by reference.

    c.  Policy number XSLG2702290A effective August 1, 2013 to August 1, 2014 (the "2013 ACE Policy"). The full terms and conditions of the 2013 ACE Policy are incorporated herein by reference.

    d.  Policy number XSLG27337193 effective August 1, 2014 to August 1, 2015 (the "2014 ACE Policy"). The full terms and conditions of the 2014 ACE Policy are incorporated herein by reference.

    e.  Policy number XSLG2739775A effective August 1, 2015 to August 1, 2016 (the "2015 ACE Policy").  The full terms and conditions of the 2015 ACE Policy are incorporated herein by reference.

    f.  The above polices are collectively referred to as "the ACE Policies," the terms and conditions of which are incorporated herein by reference.

21.     Each and every one of the ACE Policies contains the following Notice:

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT**
>
> **HOWEVER SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS**

22.     This Notice is mandated by New York insurance regulations. *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 16.3(a) ("The following notice shall appear conspicuously on the front page of each binder, policy, contract, rider or endorsement, and on all subsequent additions thereto, issued or renewed under Class 1 or 2 pursuant to section 6303(a)(1) or (2) of the Insurance Law . . .").

23.     Pursuant to Section 6303 of New York's Insurance Law, insurers may be exempt from filing their forms and rates with the State (as referenced in the above Notice) only "if the business is underwritten and transacted from an office within this state." N.Y. Ins. Law § 6303 (McKinney); *see also* 4-52 New Appleman New York Insurance Law § 52.04 (2d ed. 2011) ("The exemption from filing requirements granted by this license applies only to business underwritten and transacted by a licensee from an office within New York State.").

24.     Thus, the ACE Policies were written in accordance with the standards of the New York Insurance Law and Regulations and were to be underwritten and transacted from an office within New York.

25.     Pursuant to the ACE Policies, ACE promised, in part, to pay DISH "for the 'ultimate net loss' in excess of the 'retained limit' because of 'personal and advertising injury' to which this insurance applies."

26.     The ACE Policies define "[u]ltimate net loss" as the "total sum . . . that the insured becomes legally obligated to pay as damages by reason of settlements, judgments, or any arbitration or other alternative dispute method . . . ."

27.     The ACE Policies also provide coverage for allocated loss adjustment expenses ("ALAE"), defined as "claim expenses and costs incurred by the insured or by us in connection with the investigation, administration, adjustment, subrogation, settlement or defense of any

claim or lawsuit that we, under our accounting practices, directly allocate to a particular claim . . . provided that 'approved attorneys' are utilized."

28.    The "retained limit" in each of the ACE Policies is $500,000.  The retained limit includes ALAE expenses.

29.    The definition of "Personal and Advertising Injury" contained in the ACE Policies includes, in pertinent part:  "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

30.    The ACE Policies also contain an exclusion for "Infringement of Copyright, Patent, Trademark or Trade Secret," but the ACE Policies specifically state "this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."

31.    Accordingly, the ACE Policies provide coverage for copyright infringement in the insured's advertisement.

32.    ACE, and others, issued additional liability insurance policies to DISH that may be implicated by the Underlying Litigation.   DISH reserves the right to amend this complaint for the purpose of seeking recovery under those additional insurance policies.

## VI. THE STANDSTILL AGREEMENT BETWEEN ACE AND DISH

33.    After DISH put ACE on notice of its claim with respect to the Underlying Litigation, DISH and ACE entered into a tolling and standstill agreement ("Standstill Agreement") to allow an opportunity for both sides to examine their respective positions to see if there was a potential to avoid litigation.

34.    On July 30, 2015, DISH and ACE agreed to a two week Standstill Agreement.

35.    The Standstill Agreement provided: "During this two week timeframe, both parties agree that the other will not institute coverage litigation over the Hopper claims."

36.     ACE's Associate General Counsel, John Roth, explained the parties' agreement

further as follows:

> ACE and DISH both agree that the statute of limitations for any
> potential coverage litigation over the Hopper claims will be extended
> by the period of time during which this tolling/standstill agreement is
> in place, along with the period of any extension of this agreement (or
> any replacement of this agreement).  Thus, if the statute of limitations
> on DISH's coverage claim against ACE expires tomorrow, July 31,
> 2015 and the agreement is entered into today, DISH would have two
> weeks and two days to institute coverage litigation. During this two
> week period, DISH and ACE will discuss whether an extended
> tolling/standstill agreement is in the interests of both parties, the terms
> of any proposed extended tolling/standstill agreement and whether an
> amicable resolution of these claims is possible.

37.     That same day, the parties agreed to extend the tolling/standstill agreement for a

period of eight weeks

38.     In September 2015, the parties agreed to further extend the Standstill Agreement.

The parties agreed that the Standstill Agreement would remain in place for a period of 60 days

after the court in the case captioned as *ACE American Insurance Company v. DISH Network,*

*LLC*, 1:13-cv-00560 (D. Colo.), ruled on the parties' pending cross-motions for summary

judgment.

39.     The language of the extension, which was drafted by John Roth, provided:

> ACE has no objection to extending the Agreement for 60 days as you
> propose below . . . The Agreement will remain in place until 60 days
> after the date that the Court rules on the parties' pending motions for
> summary judgment in the matter captioned, *ACE American Insurance*
> *Company v. DISH Network, LLC*, 1:13-cv-00560-REB-MEH, USDC-
> D-CO.

40.     On March 28, 2016, Judge Blackburn entered an Order granting Summary Judgment in favor of ACE, and denying DISH's Motion for Summary Judgment.   Judge Blackburn entered judgment in favor of ACE on the same day.

41.     Accordingly, the Standstill Agreement "remain[ed] in place until 60 days after" Judge Blackburn's ruling on March 28, 2016 and, therefore, the parties agreed not to commence litigation against one another until after May 27, 2016.

42.     Because the Standstill Agreement was in place through May 27, 2016, the earliest date either party could file suit was May 28, 2016.

43.     On May 26, 2016, in violation of the Standstill Agreement, ACE commenced litigation in the United States District Court for the District of Colorado, seeking a declaration of no coverage related to the Underlying Lawsuits.   *See ACE American Insurance Company v. DISH Network Corporation et al.*, 1:16-cv-1280 (D. Colo.) ("the District of Colorado Action"), ECF No. 1.

44.     ACE's filing of the District of Colorado Action violated the parties' Standstill Agreement because ACE's filed its Complaint while the Standstill Agreement was still in effect.

## COUNT I
## DECLARATORY JUDGMENT: DUTY TO DEFEND

45.     DISH hereby repeats and incorporates its allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

46.     DISH is insured under the ACE Policies.

47.     The ACE Policies impose on ACE the duty to defend or pay the costs of defending DISH against suits alleging advertising injury.

48.     The claims asserted against DISH on behalf of the Broadcasters in the Underlying Lawsuits allege "personal and advertising injury" covered or potentially covered under the ACE Policies.

49.     DISH timely performed all requisite conditions precedent under the ACE Policies.

50.     Pursuant to the ACE Policies, ACE has a duty to defend or pay the costs of defending DISH.

51.     To date, however, ACE has failed or refused to defend or pay the costs of defending DISH in connection with the Underlying Lawsuits.

52.     By reason of the foregoing, an actual and justiciable controversy exists concerning the duty of ACE to defend or pay the costs of defending DISH in connection with the claims asserted by the Broadcasters in the Underlying Lawsuits.

53.     Accordingly, DISH seeks a declaration by this Court that ACE has a duty to defend or pay the costs of defending DISH, pursuant to the ACE Policies, in connection with the claims asserted by the Broadcasters in the Underlying Lawsuits.

WHEREFORE, DISH respectfully requests that the Court enter judgment in its favor and against ACE by:

a.     declaring that ACE has a duty to defend or to pay the costs of defending DISH against the claims asserted in the Underlying Lawsuits, pursuant to the ACE Policies;

b.     declaring that ACE's duty to defend or pay the costs of defending DISH commenced upon the filing of the Underlying Lawsuits;

c.     ordering ACE to pay for the past attorneys' fees and costs incurred by DISH in defending itself against the Underlying Lawsuits and to continue paying for such attorneys' fees and costs as they are incurred in the future; and

d.      awarding DISH its attorneys' fees, interest, costs and such other and further relief as the Court deems just and proper.

## COUNT II
### DECLARATORY JUDGMENT: DUTY TO INDEMNIFY

54.      DISH hereby repeats and incorporates its allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

55.      DISH is insured under the ACE Policies.

56.      The ACE Policies impose on ACE the duty to indemnify DISH against suits alleging "personal and advertising injury."

57.      The claims asserted against DISH in the Underlying Lawsuits allege "personal and advertising injury" committed by DISH.  As such, those claims are covered under the ACE Policies.

58.      DISH timely performed all requisite conditions precedent under each of the ACE Policies.

59.      Pursuant to the ACE Policies, ACE has a duty to indemnify DISH with respect to the Underlying Lawsuits.

60.      To date, however, ACE has failed or refused to indemnify DISH in connection with the Underlying Lawsuits.

61.      By reason of the foregoing, an actual and justiciable controversy exists concerning the duty of ACE to indemnify DISH in connection with the claims asserted on behalf of the Broadcasters in the Underlying Lawsuit.

62.      Accordingly, DISH seeks a declaration by this Court that ACE has a duty to indemnify DISH, pursuant to the ACE Policies, for any liabilities incurred in connection with the Underlying Lawsuits.

WHEREFORE, DISH respectfully requests that the Court enter judgment in its favor and against ACE by:

a.   declaring that ACE has a duty to indemnify DISH against the Underlying Lawsuits, pursuant to the ACE Policies; and

b.   awarding DISH its attorneys' fees, interest, costs and such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT: THE ACE INSURANCE POLICIES

63.   DISH hereby repeats and incorporates its allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

64.   The claims asserted in the Underlying Lawsuits are covered or potentially covered under the ACE Policies, and, accordingly, ACE is contractually obliged to pay the costs incurred by DISH in defending and resolving the Underlying Lawsuits.

65.   DISH performed all applicable conditions under the ACE Policies.

66.   ACE's failure or refusal to fulfill its duties to pay the costs incurred by DISH in defending and resolving the Underlying Lawsuits is in breach of the ACE Policies.

67.   ACE's failure to fulfill its duties to pay for the costs incurred by DISH in defending and resolving the Underlying Lawsuits has caused damage to DISH.

WHEREFORE, DISH respectfully requests that this Court enter judgment in its favor and against ACE, in an amount equal to the sums incurred by DISH in defending and resolving the Underlying Lawsuits together with attorneys' fees, interest, costs and such other and further relief as this Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT:  THE STANDSTILL AGREEMENT**

68.     DISH hereby repeats and incorporates its allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

69.     The Standstill Agreement entered into between ACE and DISH is a valid, binding contract.

70.     ACE breached the terms of the Standstill Agreement by filing a lawsuit in the District of Colorado on May 26, 2016, two full days before ACE was allowed to file suit under the terms of the Standstill Agreement.

71.      As a direct and proximate result of ACE's breach of contract, DISH has suffered, and will continue to suffer, losses and damages.

72.     DISH's losses and damages as a result of ACE's breach, include, but are not limited to, the costs and fees incurred in seeking to enjoin ACE from prosecuting the District of Colorado Action, and obtaining dismissal or transfer of ACE's defective District of Colorado action.

WHEREFORE, DISH respectfully requests that this Court enter judgment in its favor and against ACE, enforce specific performance of the Standstill Agreement, enjoin ACE from prosecuting the Colorado Action, or in the alternative award damages for ACE's breach of the Standstill Agreement, and for attorneys' fees, interest, costs and such other and further relief as this Court deems just and proper.

**COUNT V**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING:**
**THE STANDSTILL AGREEMENT**

73.     DISH hereby repeats and incorporates its allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

74.     ACE, as an insurance company, owes a duty of good faith and fair dealing to its policyholders.

75.     ACE breached its duty of good faith and fair dealing when it unreasonably and/or recklessly violated the Standstill Agreement between the parties.

76.     As a direct and proximate result of ACE's breach of the covenant of good faith and fair dealing, DISH has suffered, and will continue to suffer, losses and damages.

77.     DISH's losses and damages as a result of ACE's breach of the covenant of good faith and fair dealing, include, but are not limited to, the costs and fees incurred in seeking to enjoin ACE from prosecuting the District of Colorado Action, and obtaining dismissal or transfer of ACE's defective District of Colorado action.

WHEREFORE, DISH respectfully requests that this Court enter judgment in its favor and against ACE, enforce specific performance of the Standstill Agreement, enjoin ACE from prosecuting the Colorado Action, or in the alternative award damages for ACE's breach of the Standstill Agreement, and for attorneys' fees, interest, costs and such other and further relief as this Court deems just and proper.

## COUNT VI
## PROMISSORY ESTOPPEL:  THE STANDSTILL AGREEMENT

78.     DISH hereby repeats and incorporates its allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

79.     In the alternative to Count IV, DISH avers that under the well-established doctrine of promissory estoppel, a promise that is made with the expectation of reliance is binding if a party relies on such a promise and injustice results.

80.     ACE promised DISH that it would not file suit during the period that the Standstill Agreement between ACE and DISH was in effect, and made that promise expecting that DISH would rely on the promise.

81.     DISH reasonably relied to its detriment on the promise made by ACE that it would not file suit while the Standstill Agreement was in effect, and it would be manifestly unfair and unjust not to enforce ACE's promises.

82.     The detriment that DISH has suffered includes, but is not limited to, the costs and fees incurred in seeking to enjoin ACE from prosecuting the District of Colorado Action, and obtaining dismissal or transfer of ACE's defective District of Colorado action.

WHEREFORE, DISH respectfully requests that this Court enter judgment in its favor and against ACE, enforce specific performance of the Standstill Agreement, enjoin ACE from prosecuting the Colorado Action, or in the alternative award damages for ACE's breach of the Standstill Agreement, and for attorneys' fees, interest, costs and such other and further relief as

## REQUEST FOR JURY TRIAL

DISH hereby requests a trial by jury on all claims for which it is available.


June 7, 2016                                          Respectfully submitted,

                                                     By: /s/ Lee M. Epstein
                                                     Lee M. Epstein
                                                     Weisbrod Matteis & Copley PLLC
                                                     Two Logan Square, Suite 1925
                                                     100 N. 18th Street
                                                     Philadelphia, PA  19103
                                                     T: (267) 281-7595
                                                     lepstein@wmclaw.com